## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ROBERT RIEGEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WHOLE FOODS MARKET, INC.,  JOHN P. MACKEY, WALTER ROBB, JONATHAN SEIFFER, GABRIELLE SULZBERGER, SHAHID HASSAN, STEPHANIE KUGELMAN, JOE MANSUETO, MARY ELLEN COE, KENNETH C. HICKS, SHARON L. MCCOLLAM, RONALD M. SHAICH, SCOTT F. POWERS,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. <u>1:17-cv-00674</u> |

## CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS

Plaintiff Robert Riegel ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934. In support of this Class Action Complaint, Plaintiff, through counsel, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Whole Foods Market, Inc. ("Whole Foods" or the "Company") against the Company and the members of Whole Foods' Board of Directors (the "Board" or the "Individual Defendants") for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-

9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to Amazon.com, Inc. ("Amazon").

2.      On June 16, 2017, Amazon and the Company announced that they had entered into an Agreement and Plan of Merger dated June 15, 2017 ("Merger Agreement"), by which Amazon, through its wholly owned subsidiary, Walnut Merger Sub, Inc., ("Merger Sub"), will acquire all of the outstanding shares of Whole Foods for $42.00 per share in cash. The Proposed Transaction is valued at approximately $14 billion.

3.      On July 7, 2017, Whole Foods caused the filing of a Preliminary Proxy Statement pursuant to Section 14(a) of the Securities Exchange Act of 1934. The Proxy Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction. However, the Proxy Statement that was filed with the SEC is materially deficient and misleading in that it fails to provide adequate disclosures of all material information related to the Proposed Transaction. Accordingly, Plaintiff alleges herein that Defendants have violated Sections 14(a) and 20(a) of the Exchange Act by unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy Statement, even though they knew, or should have known, that the Proxy Statement was materially false and/or misleading.

4.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Whole Foods' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

6.      Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) Whole Foods is incorporated and headquartered in this District; and (ii) the corporate transactions, actions, and wrongs complained of herein, can only occur in this District.

## PARTIES AND RELEVANT NON-PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Whole Foods.

9.      Defendant John P. Mackey ("Mackey"), the co-founder of the Company, has served as Co-Chief Executive Officer since May 2010, was the Chief Executive Officer from 1978 to May 2010, and was President from 2001 to 2004. Mackey has served as a director of the Company since 1978 and served as Chairman of the Board from 1978 through December 2009.

10.     Defendant Walter Robb ("Robb") joined Whole Foods in 1991 and has served as a director of the Company since May 2010. He has served as Co-Chief Executive Officer, alongside Mackey, since May 2010. Robb also served as the Co-President and Co-Chief

Operating Officer from 2004 to May 2010, as Chief Operating Officer from 2001 to 2004, and as Executive Vice President from 2000 to 2001.

11.     Defendant Jonathan Seiffer ("Seiffer") has served as a director of the Company since December 2008.

12.     Defendant Gabrielle Sulzberger ("Sulzberger") has served as a director of the Company since 2003.

13.     Defendant Shahid Hassan ("Hassan") has served as a director of the Company since 2005.

14.     Defendant Stephanie Kugelman ("Kugelman") has served as a director of the Company since November 2008.

15.     Defendant Joe Mansueto ("Mansueto") is a recent appointment to Whole Foods' Board, having been appointed on May 10, 2017.

16.     Defendant Mary Ellen Coe ("Coe") has served as a director of the Company since November, 2016.

17.     Defendant Kenneth C. Hicks ("Hicks") has served as a director of the Company since May 10, 2017.

18.     Defendant Sharon L. McCollam ("McCollam") has served as a director of the Company since May 10, 2017.

19.     Defendant Ronald M. Shaich ("Shaich") has served as a director of the Company since May 10, 2017.

20.     Defendant Scott F. Powers ("Powers") has served as a director of the Company since May 10, 2017.

21.     Defendants referenced in ¶¶ 10 through 20 are collectively referred to as Individual Defendants and/or the Board.

22.     Whole Foods is a Texas corporation incorporated in 1978 and based in Austin, Texas.  It maintains principal executive offices at 550 Bowie Street, Austin, Texas 78703.

23.     The Individual Defendants and Whole Foods are referred to collectively herein as "Defendants."

## OTHER RELEVANT ENTITIES

24.     Relevant non-party Amazon is an American electronic commerce and cloud computing company that was founded on July 5, 1994, and is based in Seattle, Washington.  Amazon's principal corporate offices are located at 410 Terry Avenue North, Seattle, Washington 98109-5210.

25.     Relevant non-party Merger Sub is a Texas corporation and an indirect wholly owned subsidiary of Amazon.com that will function as the merger subsidiary in the merger.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Whole Foods common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  The Proxy Statement states that, as of July 2, 2017, there were 335,015,401 shares of common stock outstanding.  All members of the Class may be identified from records maintained by Whole

Foods or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28.     Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy Statement in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

29.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

30.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FURTHER SUBSTANTIVE ALLEGATIONS

## Company Background

32.     Whole Foods opened the first Whole Foods Market store in 1980 and is currently the leading national natural and organic foods supermarket, the first national "Certified Organic" grocer, and is uniquely positioned as one of America's healthiest grocery stores.

33.     As of April 9, 2017, the Company operated 461 stores: 440 stores in 42 U.S. states and the District of Columbia; 12 stores in Canada; and 9 stores in the United Kingdom.

**The Sale Process**

34.     On April 10, 2017, JANA Partners ("JANA"), together with certain affiliates, consultants and potential director candidates that JANA intended to sponsor, filed a Schedule 13D with the SEC disclosing that they had acquired approximately 8.8% of the Company's outstanding common stock. As a result of this purchase, JANA became the second-largest shareholder of the grocery chain.

35.     Faced with an uncertain future, the Board appointed Evercore Group L.L.C. ("Evercore") as the Company's financial advisor on April 17, 2017. Details pertaining to the selection of Evercore, which was purportedly the result of prior discussions by the Board and an *ad hoc* committee of the Board formed in March 2017 (the "Ad Hoc Committee") consisting of Dr. John Elstrott (then-Chair of the Board), Defendant Mackey, and the chairs of each of the Company's standing committees, Defendant Sulzberger, Defendant Hassan, and Defendant Seiffer, are largely absent from the Proxy.

36.     JANA's position in the Company's stock did not go unnoticed, and resulted in a number of interested potential acquirers coming forward. In fact, immediately following the appointment of Evercore, on April 18, 2017, Defendant Mackey received a letter from an industry participant ("Company X"), expressing interest in a strategic transaction between Company X and Whole Foods. Furthermore, between April 20, 2017, and May 4, 2017, various representatives of the Company and/or Evercore received separate inquiries from four private equity firms regarding their respective interests in pursuing a leveraged buy-out, private investment in public equity, or other transaction in light of JANA's activism.

37.     Despite this interest, Defendant Mackey, and Whole Foods' Executive Vice President of Operations, Ken Meyer, had their eyes set on an alternative option. On April 21,

2017, following recent media reports that stated Amazon may have previously considered buying Whole Foods, Defendant Mackey authorized one of the Company's outside consultants (the "Outside Consultant") to reach out to Amazon to see if the electronic commerce and cloud computing company would be interested in a meeting to discuss a potential strategic transaction.

38.     On April 24, 2017, the Ad Hoc Committee and the Board met telephonically to discuss Company X's interest and an upcoming meeting with JANA. That same day, the Outside Consultant spoke to Peter Krawiec, Amazon's Vice President of Worldwide Corporate Development and learned that Amazon was indeed interested in a potential transaction between the two entities.

39.     Two days later, on April 26, 2017, senior representatives of JANA met with Defendant Mackey and other members of Whole Foods' management team to discuss changes to the Company's Board. These talks continued the following day, at which time the Company expressed its willingness to interview potential director candidates sponsored by JANA in addition to the individuals who had been identified as part of the Company's own Board refreshment process.

40.     While these talks were on-going, Whole Foods and Amazon entered into a non-disclosure agreement.

41.     On April 28, 2017, Whole Foods' Board met in person to review a number of pending matters including, among other things, JANA Partners' demands and anticipated potential actions, the Company's long-term outlook, which management was in the process of updating at the prior direction of the Board, board refreshment and governance matters, certain capital allocation changes under consideration, the contact by Company X, and the viability of a leveraged buy-out. Also during this meeting, Defendant Mackey notified the Board that he and

members of the executive team had already taken steps to schedule a meeting with Amazon during the coming weekend.

42.     This planned meeting occurred on April 30, 2017, during which time the Amazon representatives and Company management discussed potential strategic opportunities between the two companies and areas of complementary capabilities.

43.     Four days later, on May 4, 2017, executives from Whole Foods and Amazon met in Austin for a due diligence session and, on May 7, 2017, the parties proceeded to execute a supplement to their non-disclosure agreement and began to engage in various due diligence matters.

44.     On May 8, 2017, a second industry participant ("Company Y") expressed an interest in a potential business relationship with Whole Foods.

45.     Later that month, on May 18, 2017, Whole Foods held discussions with Company X and Company Y regarding their respective interests. During a meeting with Company X, Company X suggested a merger-of-equals transaction, which they believed would be potentially valued at $35.00 to $40.00 per share to the Company's shareholders. Whole Foods meeting with Company Y centered upon a possible commercial relationship, such as a supply arrangement, between the two companies, and there were no discussions regarding a possible merger or acquisition of the Company.

46.     On May 23, 2017, Whole Foods received a written offer from Amazon to acquire the Company at a price of $41 a share. In its letter, Amazon stated that it had the right to terminate talks if there was any leak or rumor regarding Amazon's interest. Amazon's interest in secrecy was reiterated two days later when Goldman Sachs, Amazon's financial advisor,

communicated to Evercore that Amazon was very sensitive with respect to confidentiality, and that Amazon was not willing to engage in a multiparty sale process.

47.     A week later, the Board held a meeting to review the ongoing talks between the Company and Amazon, as well as to discuss the overtures made by other third parties, including Company X, Company Y, and the four private equity firms that had previously contacted representatives of the Company and/or Evercore. In light of Amazon's sensitivity with respect to confidentiality, the Board elected not to engage with these potential counterparties or solicit proposals from the private equity firms, given concerns about potential leaks and fact that the price proposed by Amazon purportedly likely exceeded the price level that a private equity buyer could reasonably be expected to pay. Following these discussions, the Board directed management to make a counter-proposal to Amazon at $45.00 per share.

48.     On June 1, 2017, Amazon conveyed its displeasure with the Board's counter-proposal, and proceeded to communicate that it had been considering whether to respond to the Company's $45.00 counter proposal at all or to pursue other opportunities. Despite this expressed displeasure, Amazon immediately proposed an improved offer that contemplated a merger price of $42.00 per share, but noted that it was their best and final offer. That same day, the Board met to discuss the on-going negotiations with Amazon and unanimously determined to move forward at $42 per share offer price.

49.     From June 2 through June 14, 2017, Whole Foods and Amazon, and their respective representatives, engaged in confirmatory due diligence and continued negotiations regarding a number of key issues in the Merger Agreement. Among other topics, these key issues concerned: (1) the amount and triggers for the termination fee; (2) the inclusion of the regulatory

efforts covenant; (3) operational and organizational matters; and (4) employee benefits and compensation matters to be a part of the merger agreement.

50.     On June 15, 2017, the Board met telephonically to discuss the terms of Amazon's final proposal to acquire the Company for $42.00 per share. During this meeting, Evercore delivered its fairness opinions and, following discussions with financial and legal advisors and members of Whole Foods' senior management, the Board voted to approve the Merger.

51.     Following the meeting, the Company, Amazon, and Merger Sub executed the Merger Agreement. The following day, June 16, 2017, the Whole Foods and Amazon issued a joint press release announcing the merger.

**The Proposed Transaction**

52.      In a joint press release dated June 16, 2017, the Company and Amazon announced that they had entered into the Merger Agreement the previous day.

53.     The announcement read, in relevant part:

> LONDON & HOUSTON--(BUSINESS WIRE)-- June 16, 2017—Seattle, Wash. & Austin, Texas—Amazon (NASDAQ:AMZN) and Whole Foods Market, Inc. (NASDAQ:WFM) today announced that they have entered into a definitive merger agreement under which Amazon will acquire Whole Foods Market for $42 per share in an all-cash transaction valued at approximately $13.7 billion, including Whole Foods Market's net debt.
>
> "Millions of people love Whole Foods Market because they offer the best natural and organic foods, and they make it fun to eat healthy," said Jeff Bezos, Amazon founder and CEO. "Whole Foods Market has been satisfying, delighting and nourishing customers for nearly four decades — they're doing an amazing job and we want that to continue."
>
> "This partnership presents an opportunity to maximize value for Whole Foods Market's shareholders, while at the same time extending our mission and bringing the highest quality, experience, convenience and innovation to our customers," said John Mackey, Whole Foods Market co-founder and CEO.
>
> Whole Foods Market will continue to operate stores under the Whole Foods Market brand and source from trusted vendors and partners around the world.

John Mackey will remain as CEO of Whole Foods Market and Whole Foods Market's headquarters will stay in Austin, Texas.

Completion of the transaction is subject to approval by Whole Foods Market's shareholders, regulatory approvals and other customary closing conditions. The parties expect to close the transaction during the second half of 2017.

## The Materially Misleading and Incomplete Proxy Statement

54.     On July 7, 2017, Defendants filed, or caused to be filed, a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Whole Foods stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

55.     Specifically, as set forth below, the Proxy Statement misstates or omits material information concerning: (i) Whole Foods insiders' potential conflicts of interest; and (ii) the valuation analyses prepared by Evercore in connection with the rendering of its fairness opinion. Accordingly, Whole Foods stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning Insiders' Potential Conflicts of Interest*

56.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Whole Foods management and the Board.

57.     The Proxy Statement states that, in connection with negotiating the merger agreement, Amazon had preliminary discussions with certain Whole Foods' executive officers regarding Amazon's desire to retain such officers following the closing. However, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or benefits relating to Whole Foods management, including who participated in such communications and when Amazon first expressed its interest in retaining members of

Whole Foods management following the merger. This is particularly troubling in light of the fact that the joint press release that was issued on June 16, 2017, indicates that John Mackey will remain as CEO of Whole Foods following the merger.

58.     Communications regarding post-transaction employment and investment opportunities during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

59.     The omission of this information renders certain portions of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; and (ii) "Interests of the Company's Directors and Executive Officers in the Merger."

***Material Omissions Concerning Evercore's Financial Analyses***

60.     The Proxy Statement describes Evercore's fairness opinion and the various valuation analyses it performed in support of their opinions. However, the description of Evercore's fairness opinion and the underlying analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Whole Foods public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Whole Foods stockholders.

61.     Specifically, the Proxy Statement fails to disclose various material elements of the financial analyses performed by Evercore.  For example, Evercore performed a *Selected Public*

*Company Trading Analysis*, which was presented to the Board, yet the Proxy Statement fails to disclose the observed multiples for each of the selected companies analyzed by Evercore, as well as any benchmarking analyses Evercore performed for Whole Foods in relation to the target companies.

62.     Furthermore, Evercore performed a *Discounted Cash Flow Analysis*, which was also presented to the Board. However, the Proxy Statement fails to disclose (i) fiscal year 2022 EBITDA and unlevered free cash flow; (ii) the constituent line items Evercore used in calculating fiscal year 2022 EBITDA and unlevered free cash flow; (iii) the estimated terminal value of the Company as calculated by Evercore; and (iv) the inputs and assumptions underlying the discount rate range of 7.0% to 9.0%.

63.     When a bankers' endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Furthermore, the disclosure of projected financial information provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material, and must be disclosed if Whole Foods' stockholders are to make a fully informed decision.

64.     Without such undisclosed information, Whole Foods stockholders cannot evaluate for themselves whether the financial analyses performed by Evercore were based on reliable inputs and assumptions, or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that

stockholders can fully evaluate the extent to which Evercore's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

65.    The omission of this information renders the following statements in the Proxy Statement false and/or materially misleading in contravention of the Exchange Act:

(a)    From page 38 of the Proxy Statement:

*Selected Public Company Trading Analysis*

Evercore reviewed and compared certain financial information of Whole Foods Market to corresponding financial multiples and ratios for the following publicly traded grocery retailers and mass merchandisers:

| Grocery Retailers | Mass Merchandisers |
|---|---|
| The Kroger Co. | Wal-Mart Stores, Inc. |
| Ahold Delhaize | Target |
| Corporation Sprouts Farmers Market, Inc. | |
| Weis Markets, Inc. | |
| Supervalu, Inc. | |
| Ingles Markets, Incorporated | |

Although no grocer or merchandiser is directly comparable to Whole Foods Market, Evercore selected these companies because it believed that they had characteristics that were instructive for purposes of its analysis. For each of the companies identified above, Evercore calculated and compared various financial multiples and ratios based on financial data and closing stock prices as of June 14, 2017, which Evercore obtained from filings made with the SEC and from publicly available equity research analysts' projections. The financial multiples and ratios of Whole Foods Market were based on publicly available equity research analysts' projections and information from Whole Foods Market management.

Because no selected peer group company is exactly the same as Whole Foods Market, Evercore believed that it was inappropriate to, and therefore did not, rely solely on the quantitative results of the public trading analysis. Accordingly, Evercore also made qualitative judgments concerning differences between the business, financial and operating characteristics and prospects of Whole Foods Market and the selected companies. Based upon these judgments, Evercore derived a range of multiples for the selected companies for each of calendar years 2017 and 2018 and applied such multiples to estimates prepared by the management of Whole Foods Market for calendar year 2017, which implied, in each case, a range of equity values per share of Company common stock.

(b)    From page 40 of the Proxy Statement:

*Discounted Cash Flow Analysis*

Evercore performed a discounted cash flow analysis, which is designed to estimate the value of a company by calculating the present value of estimated future cash flows of the company. Evercore calculated a range of equity values per share of Whole Foods Market based on a discounted cash flow analysis for the fiscal years 2017 through 2022. In preparing its analysis, Evercore relied on the Whole Foods Market Projections; in addition, for purposes of calculating terminal year cash flow, Evercore derived, and the Company confirmed the reasonableness of deriving, fiscal year 2022 EBITDA and unlevered free cash flow by increasing 2021 revenues by the same percentage as the percentage revenue growth from 2020 to 2021 and holding operating margins constant at 2021 levels (together with the Whole Foods Market Projections, the "Management Estimates"). For comparative purposes, Evercore also performed a discounted cash flow analysis based upon publicly available equity research analysts' reports that provided projections through fiscal year 2021 and were published after May 10, 2017, and as to which Evercore similarly derived fiscal year 2022 financial metrics ("Public Equity Analysts' Estimates").

In arriving at the estimated equity values per share of Company common stock, Evercore estimated a range of terminal values in 2022 by applying to Whole Foods Market's fiscal year 2022 estimated EBITDA, a multiple of Enterprise Value to EBITDA of 7.0x to 9.5x and by applying a perpetuity growth rate of 2.5% to 3.5%.

Evercore then discounted Whole Foods Market's projected, unlevered free cash flows, included in the Management Estimates and the Public Equity Analysts' Estimates and the estimated terminal value for each scenario, in each case, to a present value using discount rates ranging from 7.0% to 9.0%. The discount rates were based on Evercore's judgment of the estimated range of Whole Foods Market's weighted average cost of capital. Evercore calculated unlevered free cash flow by first deriving net operating profit after tax by subtracting depreciation and amortization from EBITDA and assuming a 39.0% tax rate, then adjusting the result by adding back depreciation and amortization, subtracting capital expenditures and adjusting for changes in net working capital. Based on the foregoing analysis, the discounted cash flow analysis yielded the implied value ranges for Company common stock on a fully diluted basis as set forth below:

| Scenario | Implied Value Range Per Share (Terminal Multiple) |
|---|---|
| Management Estimates | $37.11 to $51.22 |
| Public Equity Analysts' Estimates | $28.50 to $39.55 |

| Scenario | Implied Value Range Per Share (Perpetuity Growth Rate) |
|---|---|
| Management Estimates | $36.05 to $65.01 |
| Public Equity Analysts' Estimates | $23.17 to $41.80 |

66.     Based on the foregoing, Whole Foods public shareholders lack critical information necessary to evaluate whether the Proposed Transaction truly maximizes shareholder value and serves their interests. Moreover, without the key financial information and related disclosures, Whole Foods public shareholders cannot gauge the accuracy and reliability of the financial analyses performed by Evercore, and whether they can reasonably rely on their respective fairness opinions.

67.     Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

68.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

69.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.

70.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

71.     Specifically, the Proxy Statement violates Section 14(a) and Rule 14a-9 because it is materially misleading and omits material facts, as set forth above.  Moreover, in the exercise

of reasonable care, Defendants should have known that the Proxy Statement is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

72.     All of the relevant information concerning the Company's financial projections was readily available to all Defendants at all relevant times.  The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, or were grossly negligent in failing to know.

73.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a properly informed vote on the Proposed Transaction.

74.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

75.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

76.     The Individual Defendants acted as controlling persons of Whole Foods within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Whole Foods, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

77.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

79.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

80.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

81.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

82.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)     declaring that the Proxy Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C)     preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

(D)     to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E)     awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F)     awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 13, 2017

OF COUNSEL:

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W.,
Suite 115
Washington, DC 20007
(202) 524-4290

*Counsel for Plaintiff*

**KENDALL LAW GROUP, PLLC**

By:     */s/ Joe Kendall*
        Joe Kendall
        Texas Bar No. 11260700
        jkendall@kendalllawgroup.com
        Jamie J. McKey
        Texas Bar No. 24045262
        jmckey@kendalllawgroup.com
        3232 McKinney Avenue, Suite 700
        Dallas, TX 75204
        Telephone:  (214) 744-3000
        Facsimile:  (214) 744-3015

*Attorneys for Plaintiff*